Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 644-2802
(800) 536-1071 facsimile

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

KENDALL KIMBER,  )
          Plaintiff,  )
  vs.  )
    )
DENIS MCDONOUGH, Secretary,  )
Department of Veterans Affairs,  )
   ) Case No. 3:23-cv-
          Defendant.  )
_____)

COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff, Kendall Kimber, and alleges as follows:

## I. JURISDICTION AND VENUE

1. Jurisdiction is proper because the Department of Veterans Affairs is a federal agency Defendant, United States of America.

2. Venue is proper in the United States District Court for Alaska because the events giving rise to this action occurred with the State of Alaska. See 28 U.S.C.A. § 1402(b).

## II. EXHAUSTION OF REMEDIES

3. Plaintiff has satisfied the conditions precedent to filing a civil lawsuit against Denis McDonough, Secretary, Department of Veterans Affairs. This action arose when on May 18, 2020, Mr. Kimber initiated contact with an EEO counselor over discrimination and hostile work environment he was experiencing. Plaintiff presented a timely EEO complaint on August 17, 2020.

4. On February 22, 2021, Kendall Kimber timely requested a hearing on his complaint, and one was scheduled. Prior to the hearing, but after 180 days had passed since filing his complaint, Kimber withdrew his request for a hearing to pursue his claim in Federal District Court. He received his Notice of Right to Sue letter and is timely filing this lawsuit.

### III. PARTIES

5. Plaintiff Kendall Kimber is, and at all times mentioned herein was, a resident of the State of Alaska, citizen of the United States of America.

6. Plaintiff is informed and believes, and based thereon alleges that Defendant Denis McDonough, Secretary, Department of Veterans Affairs is responsible for the acts and omissions of employees of the United States Department of Veterans Affairs acting within the course and scope of employment.

7. Plaintiff is informed and believes, and alleges that his second level supervisor, David Young, Chief, Health Administrative Service, at the Anchorage VA Medical Center, was at all times hereto the agent, employee or representative of Denis McDonough, Secretary, Department of Veterans Affairs , and that he was acting at least in part within the course and scope of such relationship.

8. Plaintiff is informed and believes, and alleges that his first level supervisor, Broderick Cooper, Mobility Manager, Health Administrative Service, at the Anchorage VA Medical Center, was at all times hereto the agent, employee or representative of Denis McDonough, Secretary, Department of Veterans Affairs , and that he was acting at least in part within the course and scope of such relationship.

### IV. FACTUAL ALLEGATIONS

9. Plaintiff was employed as a Motor Vehicle Operator, Health Administrative Service, at the Anchorage VA Medical Center, in Anchorage, Alaska.

10. Plaintiff has recognized disabilities, namely high blood pressure, diabetes, PTSD and a bad back. Mr. Kimber was a qualified disabled veteran at the time of being hired and his disabilities were known to his supervisors and HR.

11. Plaintiff is also a heterosexual male, who as a youth was molested by a scout leader when he was a member of the Boys Scouts of America. Mr. Kimber has direct knowledge that both of his supervisors were aware that he was molested as a child by a scout leader at the Boys Scouts of America because they saw a news video that was publicly shown shortly after he filed, as part of a class action, a law suit against the Boys Scouts of America.

12. On or about November 6, 2018, Mr. Kimber's direct supervisor, Broderick Cooper learned that Kimber had filed a lawsuit against the Boy Scouts of America related to sexual abuse he experienced as a young Boy Scout. Upon learning of this, Mr. Cooper started to call Mr. Kimber "broke back" in public meetings. At this time, a popular movie Broke back Mountain portrayed a homosexual affair between two men who were cowboys. There existed no other reason for Cooper to call Kimber "broke back" but for the purpose of implying that Kimber was a homosexual.

13. After asking Mr. Cooper to stop using the term broke back to refer to him, Mr. Kimber finally filed a complaint about Cooper with his supervisor David Young. Mr. Kimber was told that Human Resources would do an investigation into Cooper's use of the term broke back to reference him. No resolution was shared with Mr. Kimber regarding this allegation and Mr. Cooper remained as his supervisor.

14. In March 2020, Mr. Kimber became sick at work – likely caused by being dehydrated due to a common illness. At this same time, concerns over covid were beginning to become an issue. Mr. Kimber recognized that he was being treated differently than his co-workers who had happened to get sick at work. Unlike his co-workers, Mr. Kimber was being prevented from returning to work after being sick.

15. Mr. Kimber was forced to be on medical leave for two months, after he experienced a single episode of being sick at work. In the beginning of March 2020, while attempting to get the HR office to permit him to return to work, Mr. Kimber told the office he believed his was being discriminated against based on his known disabilities, and also that he was being treated differently based on his sex because Mr. Cooper and Mr. Young were still angry that he had reported the fact that Cooper had called him broke back and implied that he was a homosexual.

16. On May 11, 2020, David Young instructed Mr. Kimber to take his medical records to Human Resources and told Human Resources that the Complainant had a disability. Mr. Kimber recognized that Mr. Young was interfering with his ability to return to work.

17. On May 12, 2020, the Complainant was required to submit to a physical before he could resume his duties as a motor vehicle operator. Mr. Kimber was aware that when he initially applied for the position of motor vehicle operator, which was a time before Mr. Young and Mr. Cooper knew that Kimber was molested as a child and before he had initiated complaints against them, he was not required to undergo the same physical testing that was required for his return to work.

18. Between May 2020 and June 10, 2020, Mr. Kimber was required to provide eight work releases from his primary physician in order to be allowed to return to work as a motor vehicle operator. Broderick Cooper additionally informed Kimber that he could not return to work until he submitted all his mental health records and provide his other medical records. Mr. Kimber was aware that this was not required of him when he initially began working as a motor vehicle operator and no regulation or policy required that he provide this information. The demand from Cooper was perceived as harassment.

19. Mr. Kimber refused to provide mental health records or medical records in order to return to work as a motor vehicle operator. While refusing to allow Kimber to work as a motor vehicle operator, Mr. Cooper, at the insistence Mr. Young, of instigated a patter of harassment against Kimber.

20. On June 15, 2020 and other unspecified dates, David Young harassed Kimber regarding the use of his government cell phone for access to the Talent Management System (TMS) for training courses.

21. On August 5, 2020, Mr. Kimber was ordered by David Young to report exactly at 7:30 am and clock out exactly at 4:30 pm. Mr. Young did not place the same requirements of an absolute clock in or clock out practice. Further, Mr. Young only placed these restrictions on Mr. Kimber after he refused to arbitrarily submit mental health and medical records.

22. On August 10, 2020, Mr. Kimber was directed to provide Occupational Health a blood sample before he would be allowed to work as a motor vehicle operator. Mr. Kimber refused to provide a blood test, arguing that it was discriminatory and an example of Young's desire to create a hostile work environment.

23. On unspecified dates in mid-August 2020, Broderick Cooper and David Young, Mr. Kimber's first and second level supervisors, repeated insisted that Kimber provide his mental health records. By making these demands, Cooper and Young made clear that they believed Mr. Kimber had a medical deficiency that precluded his ability to work as a motor vehicle operator.

24. On or about November 6, 2020, Mr. Kimber was subjected to having false reports of contacts written on him by David Young's team. This was a continuation of the harassment that he had been inflicting on Mr. Kimber.

25. After November 6, 2020, Mr. Kimber experienced continued efforts by David Young to harass and intimidate him in the workplace. This campaign of harassment became so extreme that Mr. Kimber was advised by his treating physician to resign his position or risk significant mental and physical injury.

26. Mr. Kimber, following the advise of his physician, resigned from his employment with the Defendant toward the end of January 2021. Mr. Kimber believes that his resignation was a constructive discharge by Mr. Young, who refused to allow Kimber to do his job without constant harassment and intimidation at the workplace.

## V. CLAIM FOR RELIEF

**A. DISCRIMINATION ON THE BASIS OF DISABILITY: 42 U.S.C. § 12112.**

27. Plaintiff herewith refers to, and by that reference incorporates as though fully set forth herein, each and every paragraph set forth above ¶ 9-26.

28. Plaintiff is informed and believes that Broderick Cooper and David Young treated him differently based on his disability when they used their position of authority to place restrictions on his ability to do his job as a motor vehicle operator due to their perception of his physical disability or their desire to stigmatize him because of his disabilities.

29. It is believed that Broderick Cooper and David Young would have behaved differently toward Mr. Kimber if he did not have a disability.

30. Plaintiff is informed and believes that he engaged in protected activity when he refused to submit to unnecessary tests, such as producing a blood sample, and providing mental health records, before being allowed to return to his position as a motor vehicle operator for Defendant.

31. Plaintiff is informed and believes that when he engaged in protected activity, David Young and Broderick Cooper used their position of authority, to engage in unlawfully discriminatory conduct toward him, creating a hostile work environment, as well as engaging in discrete incidents of discrimination, which became so severe that it caused Mr. Kimber to resign his employment based on the medical advise of his treating physician.

32. Mr. Kimber seeks all remedies available to under 29 U.S.C. § 794, including by reference all remedies available under 42 U.S.C. § 2000e-16(b); 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 2000e-5(k).

**B.  DISCRIMINATION ON THE BASIS OF SEX: 42 U.S.C. § 2000e-16©.**

33. Plaintiff herewith refers to, and by that reference incorporates as though fully set forth herein, each and every paragraph set forth above ¶ 9-26.

34. Plaintiff is informed and believes that Broderick Cooper and David Young treated him differently based on his sex, in that they engaged in sexual slander against him by implying that he was a homosexual based on the fact that he was sexually molested as a boy scout by a leader of the Boy Scouts of America.

35. Plaintiff believes that he was subjected to homosexual slurs, such as being called broke back by Cooper and Young, after these supervisors learned that Mr. Kimber had filed a molestation charge against the Boy Scouts of America.

36. It is believed that Broderick Cooper and David Young would have behaved differently toward Mr. Kimber if he had not been molested as a child by a scout leader.

37. Plaintiff is informed and believes that he engaged in protected activity when he refused to submit to the sex-based harassment by Broderick Cooper and David Young by filing complaints with the VA's Human Resources office and with the EEO office.

38. Plaintiff is informed and believes that when he engaged in protected activity, David Young and Broderick Cooper used their position of authority, to engage in unlawfully discriminatory conduct toward him, creating a hostile work environment, as well as engaging in discrete incidents of discrimination, which became so severe that it caused Mr. Kimber to resign his employment based on the medical advise of his treating physician.

39. Mr. Kimber seeks all remedies available to under 42 U.S.C. § 2000e-16b(b), including by reference all remedies available under 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 2000e-5(k).

## **PRAYER FOR RELIEF**

WHEREFORE, as a proximate, legal, and substantial cause of Defendant's acts and omission above, Plaintiff prays for the following remedies:

1. For injunctive relief, reinstatement of employment, with back pay, and or front pay, if reinstatement is impractical, plus whatever equitable relief as the court may deem appropriate (42 U.S.C. § 2000e-5);

2. For compensatory damages in the amount of $300,000.00, as permitted under 42 U.S.C. § 1981a(b) (42 U.S.C. § 2000e-16b);

3. For reasonable attorney's fees as provided by statute (42 U.S.C. § 2000e-5(k));

4. For pre-judgment interest as allowed by law;

5. For cost of suit herein;

6. For any other such relief as the Court deems just and proper, or as permitted by statute.

COMPLAINT FOR DAMAGES:
KIMBER V. MCDONOUGH                                                    PAGE - 8 -

1  Dated this 3rd day of April 2023.

                                        S/ Isaac Zorea
                                        Law Offices of Isaac D Zorea
                                        P.O. Box 210434
                                        Anchorage, AK 99521
                                        Telephone: (907) 830-1385
                                        Facsimile: (800) 536-1071
                                        E-mail: Eyedz@gci.net